# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 03-0838

STATE OF LOUISIANA

VERSUS

PHONESANGA PHAYARATH

**********

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 01-1519
HONORABLE GERARD B. WATTIGNY, DISTRICT JUDGE

**********

## OSWALD A. DECUIR
## JUDGE

**********

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and Glenn B. Gremillion, Judges.

**AFFIRMED AS AMENDED.**

J. Phil Haney
District Attorney
300 Iberia Street, Suite 200
New Iberia, LA 70560
(337) 369-4420
Counsel for Plaintiff/Appellee:
    State of Louisiana

Raymond L. Marie
Attorney at Law
209 French Street
New Iberia, LA 70560
(337) 367-3642
Counsel for Defendant/Appellant:
    Phonesanga Phayarath

Phonesanga Phayarath
Iberia Parish Criminal Justice Facility
3618 Broken Arrow Road
New Iberia, LA 70560

**Renee M. Louviere**
**Assistant District Attorney**
**Courthouse-5th Floor**
**Franklin, LA 70538**
**(337) 828-4100**
**Counsel for Plaintiff/Appellee:**
     **State of Louisiana**

**DECUIR, Judge.**

The Defendant, Phonesanga Phayarath, was charged by bill of information with distribution of a Schedule I controlled dangerous substance, namely MDMA, in violation of La.R.S. 40:966(A)(1), and with possession with intent to distribute a Schedule IV controlled dangerous substance, dextropropoxyphene, in violation of La.R.S. 40:969(A)(1). Pursuant to a plea bargain with the State, he entered a plea of guilty to the reduced charge of attempted distribution of MDMA, and the State agreed to dismiss the count of possession with intent to distribute dextropropoxyphene. The Defendant was sentenced to eight years at hard labor, with all but five years suspended.

The Defendant is now before this court alleging four assignments of error.

## ASSIGNMENT OF ERROR NO. 1:

In his first assignment of error, the Defendant contends there are errors patent on the face of the record. He alleges the trial court never informed him of the maximum possible penalty provided by law, in violation of La.Code Crim.P. art. 556.1(A)(1). The Defendant also alleges that the plea agreement is ambiguous as to its description of the type of sentence he would receive.

In *State v. Guzman*, 99-1528, p. 6 (La. 5/16/00), 769 So.2d 1158, 1162, the Louisiana Supreme Court held, "whether a trial court complied with La.C.Cr.P. art. 556.1 is not subject to error patent review but must instead be designated as an assignment of error by the defendant on appeal." Although erroneously described as an error patent, the Defendant did assign as error the failure of the trial court to inform the Defendant of the maximum penalty as required by Article 556.1(A)(1). Therefore, the assignment of error is subject to review.

The *Guzman* court further held that "violations of La.C.Cr.P. art. 556.1 which do not rise to the level of *Boykin* violations are not exempt from the broad scope of

La.C.Cr.P. art. 921." *Id*. at 1164. Article 921 states, "[a] judgment or ruling shall not be reversed by an appellate court because of any error, defect, irregularity, or variance which does not affect substantial rights of the accused." The *Guzman* court reiterated the rule that the core *Boykin* constitutional requirements do not include advice regarding sentencing and adopted and detailed a harmless error test for cases involving violations of Article 556.1(A)(1) and (E).

In *U.S. v. Johnson*, 1 F.3d 296, 298 (5th Cir. 1993), the Fifth Circuit set forth a straightforward, two question test to determine "harmless error." First, did the sentencing court vary from the required procedures? Second, if so, did such variance affect substantial rights of the defendant? *Id*. In order to determine whether the error affects the defendant's substantial rights, the Fifth Circuit focused on "whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." *Id*. at 302.

Article 556.1(A)(1) provides in part:

In a felony case, the court shall not accept a plea of guilty or nolo contendere without first addressing the defendant personally in open court and informing him of, and determining that he understands, all of the following:

(1) The nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law.

In this case, the Defendant was charged with distribution of MDMA. La.R.S. 40:966(B)(2) lists the penalty for distribution of MDMA as imprisonment at hard labor for not less than five years nor more than thirty years, at least five of which shall be served without benefit of parole, probation, or suspension of sentence, and a fine of not more than fifty thousand dollars.

Pursuant to an agreement with the State, the Defendant pled guilty to attempted distribution of MDMA in return for a reduction of the original charge of distribution

2

and dismissal of a second drug charge.  The minutes reflect that Defendant is guilty of attempt under La.R.S. 14:27 which provides that the sentence imposed for attempt shall not exceed one-half of the longest term of imprisonment prescribed for the offense attempted.  The supreme court has found this language requires no minimum penalty provision.  *State v. Callahan,* 95-1331 (La. 3/29/96), 671 So.2d 903, *appeal after remand*, 29,351 (La.App. 2 Cir. 2/26/97), 690 So.2d 864, *writ denied*, 97-0705 (La. 9/26/97), 701 So.2d 979.  Thus, the sentencing range for attempted distribution of MDMA is zero to fifteen years imprisonment.

The transcript of the plea hearing in this case contains the following colloquy:

By the Court:

Q:    The possible sentence you could receive for pleading guilty to this charge is from zero to 15 years and a fine of up to $25,000.00.  Do you understand the possible penalty you could receive for pleading guilty to this charge?

By the Defendant:

A:    Yes, sir

Q:    You have entered into a plea agreement in which you have agreed to plead guilty to Attempted Distribution of MDMA.  In exchange for the guilty plea, the State has agreed to dismiss this other count and you would plead open-ended.  We would order a certified criminal history.  Do you have a cap on the plea?

By the State:

A:    It's zero to 15, Your Honor.

By the Court:

Q:    Okay.  So, it's open ended.

By the State:

A:    Yes, sir.

By the Court:

Q:    You will plead open-ended.  We will order a certified criminal history and then we will schedule a sentencing hearing at which

3

> time you will be able to produce evidence, the State would be able to produce evidence to me, and I would then decide at that time what your sentence would be. Somewhere between zero and 15 years. Is that your understanding of what you have agreed to do?

By the Defendant:

A:     Yes, sir.

While the trial court did not explicitly state that an open-ended plea refers to a plea with no cap on the sentencing range and that fifteen years is the maximum sentence, the trial court did inform the Defendant of the sentencing range. Therefore, the trial court did not vary from the procedure required by Article 556.1.

The Defendant also claims that the plea agreement is ambiguous as to its description of the type of sentence involved.

This court has held that when the record establishes that a defendant was informed of and waived his rights to trial by jury, to confront his accusers, and against self-incrimination, the burden shifts to the accused to prove that despite this record, his guilty plea was involuntary. *State v. Landry*, 97-1460 (La.App. 3 Cir. 5/6/98), 711 So.2d 853; *see State v. Wood*, 34,819 (La.App. 2 Cir. 8/22/01), 793 So.2d 441, 446 *(citing State v. Hoover*, 34,952, 34,953 (La.App. 2 Cir. 4/5/01), 785 So.2d 184).

The record shows the trial court informed the Defendant of his rights, as required by *Boykin*, before accepting the guilty plea. The trial court advised the Defendant of his right to plead not guilty and to have a jury trial, his right to confront his accusers, and his right to remain silent and not testify against himself. The trial court further informed the Defendant that he had a right to put on a defense and explained to him his rights to appeal. The trial court asked the Defendant if he had reviewed his plea agreement with his attorney, and the Defendant responded that he had. The trial court then asked the Defendant's counsel if he had reviewed the plea agreement with his client, and counsel responded affirmatively. The Defendant claims

4

that the plea agreement form is ambiguous, but neither he nor his counsel attempted to remedy any ambiguity at the time of the plea. Thus, the Defendant has not satisfied his burden of proving that his guilty plea was involuntary as a result of ambiguity in the plea agreement form.

Thus, this assignment is without merit.

## ASSIGNMENT OF ERROR NO. 2:

In his second assignment of error, the Defendant claims that he reasonably believed he would receive a probated sentence instead of a prison term; therefore, he should be able to withdraw his guilty plea. In support of his motion, the Defendant cites *Landry*, 711 So.2d 853; *State v. Hayes*, 423 So.2d 1111 (La.1982); and *State ex rel. LaFleur v. Donnelly*, 416 So.2d 82 (La.1982).

The Defendant filed a motion to reconsider sentence, which was denied; however, the motion did not allege that a suspended sentence was a part of the plea agreement made with the state. The Defendant did not attempt to withdraw his guilty plea. Consequently, the Defendant's knowledge at the time of his plea is raised for the first time on appeal.

In *Landry*, 711 So.2d at 854 (footnote omitted), this court stated:

> Pursuant to La. Code Civ.P. art. 559(A), a trial court "may permit a plea of guilty to be withdrawn at any time before sentence." However, the courts of this state have previously allowed those guilty pleas which are constitutionally deficient to be withdrawn, after sentencing, on appeal or post-conviction relief. *State v. Dixon*, 449 So.2d 463 (La.1984). In the instant matter, not only has sentence been imposed, but, apparently, the defendant alleges breach of the plea agreement for the first time on appeal. Because we conclude the validity of the defendant's plea is possibly at issue, [sic] due to the question of whether it was knowing and intelligent, rather than solely the parties' compliance with the plea agreement, we review the matter despite the defendant's failure to squarely present the issue previously.

Because this Defendant also raises the question of whether his plea was knowing and intelligent, we will review the merits of the assignment.

5

In *Landry*, 711 So.2d at 854, this court set forth a two-part test to determine if a defendant should be allowed to withdraw a guilty plea after sentencing. First, the record must show that the defendant was properly *Boykinized*. To satisfy *Boykin*, the face of the record must demonstrate that the defendant expressly and knowingly waived the constitutional guarantees against self-incrimination, the right to trial by jury, and the right to confront his accusers. Second, once the record shows the defendant was informed of and waived these rights, the burden shifts to the defendant to prove that, nevertheless, his guilty plea was constitutionally infirm.

In the case at bar, the record shows that, prior to accepting his guilty plea, the trial court clearly informed the Defendant of his rights as required by *Boykin*. Therefore, the burden now shifts to the Defendant to prove that the plea was constitutionally infirm. After this court decided that the defendant in *Landry* had waived his *Boykin* rights, the court went on to say that the inquiry does not end with the waiver of these rights.

> It is by now settled law that a guilty plea is constitutionally infirm when a defendant is induced to enter that plea by a plea bargain or by what he justifiably believes was a plea bargain, and that bargain is not kept. In such a case a defendant has been denied due process of law because the plea was not given freely and knowingly.

711 So.2d at 855 (quoting *State v. Dixon,* 449 So.2d 463 (La.1984)).

The Defendant in this case claims that his guilty plea was not knowingly and freely given because he reasonably believed that he would receive a probated sentence rather than a term of imprisonment. However, he has presented no evidence showing why he reasonably believed he would receive a probated sentence. In fact, the record contains no mention by the State of a probated sentence, nor does the record reveal that the Defendant was under the impression that he would receive a probated sentence. During oral arguments at the close of the sentencing hearing, the Defendant's trial counsel stated:

6

[H]e's never been in trouble before, never been in trouble since, never even been arrested. I don't mean pled to something and got – never even been arrested. He's been a steady worker. He's married. *Judge, we'd like – we would hope for a suspended sentence.* He does not have a substance abuse problem, never had a substance abuse problem. I just think that, you know, certainly he pled to it; and to the extent he was involved, he made a mistake. But that's it.

The State's attorney responded as follows:

I would point out, Your Honor, that [the Defendant] sold controlled dangerous substances to an undercover agent, Schedule I controlled dangerous substances. The *[S]tate feels that a substantial hard labor sentence is warranted in this matter* since [the Defendant] is involved in the sale of illegal narcotics in our community.

The Defendant did not object to the State's request for a "substantial hard labor sentence," nor did he indicate that his understanding of the plea agreement was that he would receive a probated sentence.

The Defendant cites *Hayes* and *LaFleur* in support of his position. The defendant in *Hayes* pled guilty while under the assumption that he would not be sentenced as a multiple offender. A month later the district attorney's office filed a bill of information charging the defendant as a multiple offender. The trial court sentenced him accordingly, and the supreme court vacated the sentence. In *LaFleur*, the supreme court vacated a sentence imposed based on a voluntary plea of guilty due to the defendant's obvious confusion about the sentence and his parole eligibility.

In the present case, the Defendant did not object or show confusion as to the sentence to be imposed. His attorney requested a suspended sentence, which shows that he could not have reasonably believed that he would receive a probated sentence. There was also no explicit agreement in which the State agreed to recommend a suspended or probated sentence, as evidenced by the State's request for hard labor.

This court has held that a distinction exists between an "agreed upon plea" and an "agreed upon sentence." *State v. Higginbotham*, 03-49, p. 4 (La.App. 3 Cir. 4/30/03), 843 So.2d 1230, 1232. In this case, there was an "agreed upon plea"

7

between the Defendant and the State, through which the State agreed to dismiss the second charge and reduce the offense to which the Defendant pled guilty. There was not an "agreed upon sentence" or even an agreed upon recommendation for sentence. This is evidenced in the record of the sentencing hearing by the State's request for a "substantial hard labor sentence," and the Defendant asking for a suspended sentence.

**ASSIGNMENTS OF ERROR NOS. 3 & 4:**

The Defendant next contends the trial court did not adequately comply with the requirements of La.Code Crim.P. art. 894.1, and he alleges that the sentence imposed is constitutionally excessive. In his motion to reconsider sentence, the Defendant alleged that his sentence was excessive and that those sentenced for similar offenses had received lesser sentences. He also listed several mitigating factors and asserted that the trial court "did not properly consider the [Defendant's] history of no prior criminal activity."

In *State v. Butler*, 98-1258, p. 6 (La.App. 3 Cir. 2/3/99), 734 So.2d 680, 683, this court stated that a trial court is "not required to rigidly list every factor under the sentencing guidelines. However, the record must establish that the trial court took cognizance of the sentencing guidelines established in Article 894.1." This court has also held that the sentencing court is not required to "articulate every circumstance or read through a checklist of items to comply with the requirements of La.Code Crim.P. art. 894.1." *State v. Delgado*, 03-46, p. 3 (La.App. 3 Cir. 4/30/03), 845 So.2d 581, 583 (quoting *State v. Anderson*, 95-1688 (La.App. 3 Cir. 5/8/96), 677 So.2d 480, 483). The record must, however, reflect that the trial court gave adequate consideration to Article 894.1 in particularizing the defendant's sentence. *Id.*

In the present case, when the trial judge sentenced the Defendant, he stated:

The court considers the following relative to the sentencing to the defendant in this case. He has a twelfth grade education. He's a welder. He is married with no children.

8

. . . .

The court finds that the [D]efendant has already received a substantial benefit by the plea bargain. More than one-half of the possible sentence has been done away with as a result of the plea bargain.

On July 6th, 2001, the [D]efendant sold MDMA with another individual to undercover agents who solicited the purchase of the drugs.

The offense of course involves a controlled dangerous substance offense.

The [D]efendant has no prior record.

The factors enumerated by the sentencing court, as well as the evidence in the record, depict a married defendant with a solid work history whose father-in-law came forward to testify on his behalf. He has no criminal history whatsoever, no convictions and no arrests. The guilty plea to *attempted* distribution was based on an alleged drug transaction involving less than $200.00 and an undercover agent. While the record reflects an effort to comply with the requirements of Article 894.1, we do not find the sentence imposed was particularized to this individual defendant, nor was it warranted given the circumstances of this case. The sentence imposed is excessive and, as such, is an abuse of discretion and must be amended.

In searching the record for justification of a five-year term of incarceration for this first-time offender, we glean from the sentencing judge's comments that he imposed the minimum sentence for distribution rather than for attempt, which has no minimum term of incarceration. *See Callahan*, 671 So.2d 903. We find this to be in error. Therefore, considering the record, the crime to which the defendant pled guilty, and the fact that the defendant has already served a year in jail, we correct and amend the sentence so as to reduce it from eight years at hard labor to five years, with all but one and a half years suspended. Upon release, the Defendant will be subject to the probationary conditions set forth by the trial court for the remaining three and a half

9

years of his sentence.

Accordingly, for the foregoing reasons, the sentence imposed upon the defendant is hereby amended from *eight years at hard labor, with all but five years suspended,* to *five years at hard labor, with all but one and a half years suspended.*

**AFFIRMED AS AMENDED.**