902 So.2d 1190 (2005)
STATE of Louisiana, Appellee
v.
Gretchen Nuss BURFORD and Kevin J. Burford, Appellant.
No. 39,610-KA.
Court of Appeal of Louisiana, Second Circuit.
May 11, 2005.
Rehearing Denied June 3, 2005.
*1193 Joseph W. Bailey, for Kevin Burford.
Harvetta Strozier Colvin, Shreveport, for Gretchen Burford.
Don M. Burkett, District Attorney, Richard Z. Johnson, Jr., Assistant District Attorney, for Appellee.
Before WILLIAMS, DREW and MOORE, JJ.
MOORE, J.
Gretchen Nuss Burford and her husband, Kevin J. Burford, defendants herein, pled guilty to the attempted armed robbery of Johnny May, a retired merchant. Both received hard labor sentences. She received 30 years while he was sentenced to 40 years. Both now appeal claiming the sentences are excessive. Finding no error, we affirm both the convictions and sentences.

FACTS
Johnny May, a retired merchant, was awake in his home in Gloster, Louisiana, in rural DeSoto Parish late in the evening of February 20, 2003 when he heard a knock at his front door. May's wife, an Alzheimer patient, was already in bed. May did not know the woman at the door, the defendant, Gretchen Nuss Burford. Gretchen was wearing a wig and a pair of glasses. She told May that her car had broken down, and she asked to use his telephone. May let her in to make the telephone call, locking the security door behind her.
Gretchen made a telephone call later traced to the Kickapoo Corner Store. Shortly afterwards, there was another knock on the door. As the defendant went toward the door, May saw a masked man holding a pistol. The masked man was Kevin Burford, who had known May from childhood, and had been in May's store many times.
May wrestled with Gretchen, keeping her from opening the door, and keeping her between him and the man with a gun. Kevin Burford called out to open the door or he would shoot through it. During the struggle, they bumped into a grandfather clock. May apparently released the girl to save the clock from falling over. During the struggle, he told Gretchen that he had a gun down the hall, and when he released her, he rushed down the hall to his bedroom where his wife was sleeping. Once in the room, he pushed the panic button on the security alarm, and then he armed himself with a .357 caliber revolver. He fired the revolver once down the hall to let the attackers know he was armed. At the sentencing hearing, he testified that he did not know whether Kevin Burford came into his home. As far as he knew, Gretchen Burford was not armed.
When the police arrived, the attackers were gone. May was not able to identify the two, and the police did not recover any evidence to provide any leads to their identity. The case was unresolved for several months until the Burfords and one Jimmy Peck were arrested on federal bank robbery charges stemming from the burglary of two Shreveport ATM machines and an armed robbery in the Shreveport home of another elderly couple.[1]
*1194 During the interrogation regarding those charges, the Burfords confessed to the attempted robbery of the Mays.
The Burfords were charged with attempted armed robbery and aggravated burglary. After pre-trial delays, both agreed to plead guilty to the one count of attempted armed robbery. In consideration for the guilty plea, the state agreed to dismiss the aggravated burglary charge. No sentence or sentencing cap was agreed upon, but the sentences would be subject to their PSI reports.
During their guilty pleas, the hearings on which were held separately, each was advised of their rights that they were waiving with their guilty pleas together with the terms of the plea agreement. The court minutes show that each defendant pled guilty to attempted armed robbery in docket No. 038938, and the charges of aggravated burglary in docket No. 038938, attempted armed robbery in docket No. 038937, and attempted aggravated burglary in docket No. 038937, were dismissed. There is no pleading in this record relating to docket No. 038937.
Prior to his sentencing, Kevin Burford filed an "Objections to Pre-Sentence Report," correcting several inconsequential errors in the PSI, including the wrong middle initial of his name, that he is 33 years old instead of 34, that he received an honorable discharge from the Marine Corps in 1992, that he tried marijuana only when he was 28, and he was not a user as the PSI could be construed to depict. Also, he was previously charged with theft, but the charges were dismissed after an investigation showed he was wrongfully accused. He said he was offered reinstatement into the Shreveport Police Department but refused.
Burford presented several letters to the judge in support of leniency. A letter from Burford's nine-year-old daughter stated: "I think Gretchen is the reason my Daddy did those things." A letter from his ex-wife stated that he had been a good father to their child. There were similar letters from his former father-in-law and former mother-in-law, the child's grandparents. Burford also submitted a letter admitting his fault in the crime and asking for leniency.
There were no pleadings or letters filed in support of Gretchen Burford prior to her sentencing.
The Burfords were each sentenced on August 5, 2004. They did not produce any evidence or testimony on their behalf. However, the victim Johnny May testified about the facts of the crime and the impact upon him and his wife.
Gretchen Burford was sentenced first. When asked by the trial court if there was any information that needed to be explained or supplemented on her behalf, Gretchen Burford's counsel stated only that she had completed and discharged a substance abuse program with the federal probation office, and she was working with a 4-H program and running a German Shepherd rescue program.
During Gretchen Burford's sentencing, the trial court noted that she did not want to accept blame for what she had done, citing her statement in the PSI, "I got myself into a bad relationship. I didn't know how to get myself out." The trial court stated that it was "absolutely unpersuaded" by any of the mitigating factors in her case, referring to her as "a domestic terrorist." It stated that any lesser sentence than the one he was about to impose "would deprecate the seriousness of her crime." After reviewing the factors in La. *1195 C. Cr. P. art. 894.1, the court sentenced Gretchen Burford to 30 years at hard labor.
The trial court ordered the statements from Kevin Burford's family filed into the record. It noted that Burford had accepted responsibility for his actions. After reviewing the factors in La. C. Cr. P. art. 894.1, the court sentenced Kevin Burford to 40 years at hard labor. Commenting on the crimes of the defendants, the trial court stated: "I believe that they launched on a crime spree and for all intents and purposes are domestic terrorists."
Gretchen Burford timely filed a motion to reconsider sentence in which she sought leniency, and for the first time claiming that she "was abused and intimidated by her husband, Kevin Burford." She also asserted that she had entered the plea, with an agreement by the state for co-operation with the understanding that she would testify against the co-defendants without exposure to excessive sentencing or "a lot of time" for her help, and that she was still co-operating with the state and providing them with information up to the time of her sentencing.
In support of her motion for reconsideration, Gretchen Burford attached numerous letters and statements from family and friends in support and requesting that the court reduce her punishment, and a June 10, 2003 letter from Sheila Baxter, with Cornerstone Counseling, detailing her interviews of Gretchen, and her conclusions that "Gretchen's actions were almost totally controlled by Kevin." The trial court denied the motion for reconsideration without a hearing.
Kevin Burford's motion for reconsideration merely asked the trial court to reconsider the sentence pursuant to La. C. Cr. P. art. 881.1. His motion was also denied without a hearing. This appeal followed.

DISCUSSION
The record shows that after the appeal was lodged, the state failed to timely file its brief, even after a seven-day notice was filed. The state's untimely brief minimally addresses the defendant's assignments of error.
In addition to some specific errors discussed below, both defendants argue that their sentences are excessive.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App. 2 Cir. 6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App. 2 Cir. 4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2 Cir.), writ denied, 521 So.2d 1143 (La.1988).
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background *1196 of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, 29,519 (La.App. 2 Cir. 4/2/97), 691 So.2d 864.
As a general rule, maximum sentences are appropriate in cases involving the most serious violation of the offense and the worst type of offender. State v. Grissom, 29,718 (La.App. 2 Cir. 8/20/97), 700 So.2d 541; State v. Walker, 573 So.2d 631 (La.App. 2 Cir.1991). However, in cases where the defendant has pled guilty to an offense which does not adequately describe his conduct, the general rule does not apply and the trial court has great discretion in imposing the maximum sentence possible for the pled offense. This is particularly true in cases where a significant reduction in potential exposure to confinement has been obtained through a plea bargain and the offense involves violence upon a victim. State v. Black, 28,100 (La.App. 2 Cir. 2/28/96), 669 So.2d 667.

KEVIN BURFORD'S SENTENCE
By his assignments of error, Kevin Burford argues his sentence is constitutionally excessive, and rendered without fully applying the sentencing guidelines set forth in La. C. Cr. P. art. 894.1. The state argues the trial court did not abuse its discretion in sentencing.
In his motion for reconsideration of the sentence, Kevin Burford asserted only that his 40-year hard labor sentence is excessive. On appeal, he additionally argues the trial court failed to comply with La. C. Cr. P. art. 894.1 when rendering the sentence. When a defendant's motion for reconsideration urges merely that the sentence is excessive, he is relegated only to a claim of constitutional excessiveness. State v. Mims, 619 So.2d 1059 (La.1993).
Armed robbery carries a hard labor sentence of not less than 10 years and not more than 99 years, all without benefit of parole, probation or suspension of sentence. (La. R.S. 14:64(B)). In this case, the crime was attempted armed robbery. Attempted armed robbery carries a sentence not longer than half the maximum sentence permitted for the completed crime. La. R.S. 14:27(D)(3). In this instance, then, the maximum sentence that the Burfords could have been sentenced is 49½ years at hard labor without benefit of probation, parole or suspension of sentence. There is no statutory mandatory minimum sentence in cases involving attempted offenses under La. R.S. 14:27. State v. Callahan, 95-1331 (La.3/29/96), 671 So.2d 903; State v. Baker, 34,973 (La. App. 2 Cir. 9/26/01), 796 So.2d 145, 158.
Prior to imposing sentence, the court reviewed Kevin Burford's personal history contained in the PSI report in open court. Applying La. C. Cr. P. art. 894.1, the court found Kevin Burford's conduct was deliberately cruel to the victims; that he knew or should have known that the victims were incapable of resistance either because of their age or ill health; that he used actual threats of violence against the victims; that because Kevin Burford had "literally grown up knowing the victim in this case," he was in a position to know who were the best victims to rob; that the crime had created a risk of death or great bodily harm to more than one person; and, that a dangerous weapon was used. Last, *1197 the trial court found that because of the violent crime spree, the defendants were "domestic terrorists." The court concluded that a lesser sentence would deprecate the seriousness of the offense.
The 40-year sentence without benefit of probation, parole or suspension of sentence in this case is very near the statutory maximum, and is undoubtedly a very, very harsh sentence for a first felony offender. The trial court, however, carefully considered the facts and circumstances of this crime before imposing the sentence. The court articulated the aggravating circumstances for imposing the long sentence, and it found no mitigating circumstances. In this latter regard, we add our observation that the defendant is a fully mature, 33-year-old man, a former police officer, and a Marine Corps veteran with no apparent mental or social disabilities. There is no evidence he was suffering from economic hardship. He knew the consequences of his actions. While the sentence imposed for this offense compels us to carefully scrutinize the trial court's reasons in light of the seriousness of the crime, we cannot say, in this particular case, that the 40-year sentence shocks our sense of justice, although it is surely near the limit of conscionability. A trial court has broad discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, an appellate court may not set aside a sentence as excessive. State v. Guzman, 99-1528, 99-1753 (La.5/16/00), 769 So.2d 1158, writ granted, 99-1753 (La.12/17/99), 751 So.2d 865 affm'd 99-1753 (La.5/16/00), 769 So.2d 1158. For these reasons, we conclude that the sentence is not unlawful or unconstitutional. These assignments are therefore without merit.

GRETCHEN BURFORD'S SENTENCE
Gretchen Burford alleges the court made nine errors regarding her sentencing. Several of the alleged sentencing errors are interrelated and will be considered together.
However before turning to these assignments of error, we note that there are some facts asserted in Gretchen's appellate brief for purposes of the excessive sentence claim that are in reality issues regarding the validity of the plea agreement. Gretchen Burford states that she entered the plea agreement with the understanding that she would not receive "a lot of time" in her sentence. We have no evidence in the record of a sentencing agreement as part of the plea agreement. Also, counsel notes that prior to accepting Gretchen's guilty plea to attempted armed robbery, the court indicated that the sentence would be subject to probation, parole or suspension of sentence. Our review of the record corroborates that the court discussed with counsel the minimum and maximum sentence for attempted armed robbery, and further stated that the requirement (in an armed robbery conviction) that the sentence be served "without benefit of probation and parole or suspension of sentence does not apply." (Emphasis ours). The court then asked Ms. Burford if she understood "the discussion and what the penalty range is, that it will be based on the presentence investigation."
The court is required under La. C. Cr. P. art. 556(A)(1) to discuss the nature of the charge to which the plea is entered and the mandatory minimum and maximum sentence. While the court got the sentencing range correct, 0 to 49½ years, the court incorrectly indicated that the sentence would be subject to the benefit of probation, parole or suspension of sentence. This is an incorrect statement of the law. A sentence of imprisonment for attempted armed robbery must be served *1198 without benefit of parole, probation or suspension of sentence. State ex rel. Sullivan v. Maggio, 432 So.2d 854 (La.1983). In State ex rel. LaFleur v. Donnelly, 416 So.2d 82 (La.1982) the supreme court held that although the defendant's guilty plea was made voluntarily, it was not knowingly and intelligently entered due to his mistaken understanding of when he would be eligible for parole; thus, his convictions and sentences were reversed and set aside. However, in State v. Phayarath, XXXX-XXXX (La.App. 3 Cir. 2/4/04), 866 So.2d 332, the defendant, who raised the question of the validity of his guilty plea for the first time on appeal on grounds that he thought his sentence would be with benefit of parole, failed to produce evidence in the record that showed he was misinformed as to parole eligibility. The supreme court has also held that even though "advice with respect to the defendant's sentencing exposure may facilitate the taking of a voluntary guilty plea, [it] does not form part of the core Boykin requirements for the entry of a presumptively valid guilty plea." State v. Anderson, 1998-2977 (La.3/19/99), 732 So.2d 517. Finally, we observe that the sentencing court did not designate the offense as a crime of violence as required by La. C. Cr. P. art. 890.1, subject to the provisions of La.R.S. 15:571.3. Nevertheless, inasmuch as these issues are not presented in this appeal in the posture of an infirm guilty plea, but rather in terms of thwarted expectations regarding her sentence, the issue of the validity of Ms. Burford's guilty plea is not currently before this court. This is an issue that should be addressed in a petition for post-conviction relief because a PCR creates the opportunity for a full evidentiary hearing, La. C. Cr. P. art. 930. State ex rel. Bailey v. City of West Monroe, 418 So.2d 570 (La.1982); State v. Williams, 33,581 (La.App. 2 Cir. 6/21/00), 764 So.2d 1164.
Subsequently, the court went on to sentence Gretchen Burford to 30-years at hard labor without mentioning that the sentence is without benefit of probation, parole or suspension of sentence. Ms. Burford's appellate counsel has submitted a lengthy but thoroughly researched appellate brief alleging several assignments of error, and she has included additional scholarly research and evidence arguing that the defendant has diminished culpability arising from her husband's abusive domination and control over her.
We begin with defendant's contention that the court relied on facts outside the record supporting the conviction to enhance the sentence. By assignments three and four, Ms. Burford alleges that the trial court erred when it imposed a sentence based upon facts outside the scope of the factual basis for the guilty plea or by using those additional facts as aggravating circumstances to increase the sentence, thereby violating the holding of Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). The alleged additional fact upon which the court based its sentence in whole or in part, argues defendant, is the court's conclusion that Gretchen has refused to take responsibility for her actions. This conclusion was based on Gretchen's written statement: "I got myself into a bad relationship. I did not know how to get myself out." The court read this statement as proof of what it found most disturbing about today's society, that is, that no one wants to accept blame for the things they have done. It paraphrased Gretchen's remarks as her stating that "I take no responsibility for anything I did." The court went on to characterize Gretchen as a "domestic terrorist."
In Blakely v. Washington, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the defendant pled guilty to kidnaping and the *1199 facts admitted in his plea supported a maximum sentence of fifty-three months; however, pursuant to state law, the court imposed an "exceptional" sentence of ninety months after making a judicial determination that the defendant acted with "deliberate cruelty." The issue in Blakely involved whether this sentence enhancement violated the defendant's Sixth Amendment right to trial by jury. The Supreme Court considered its holdings in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) and Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), recognizing that the facts supporting the sentence enhancement were neither admitted by the defendant nor found by a jury, and noted that "the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." Id. at 2537. The defendant's sentence was declared invalid because it failed to comply with the Sixth Amendment.
Blakely does not apply in this case. The court relied on a presentence investigation pursuant to La. C. Cr. P. art. 875 to aid in sentencing. The defendant's arguments are patently inapplicable in this case since Blakely v. Washington, supra, only applies where the trial court uses facts outside the guilty plea to increase a defendant's sentence beyond the statutory maximum in the offense submitted to a jury. In the present case, Gretchen Burford pled guilty to attempted armed robbery that carried a statutory maximum sentence of 49½ years. La. R.S. 14:64, 14:27. Her 30-year sentence was 19½ years UNDER the statutory maximum that would have been considered by a jury for that offense.
By assignments one, two, five, six and nine, the defendant argues that the court imposed an excessive sentence and erred in denying her motion for reconsideration of sentence, in finding that imprisonment is necessary in this case, in ignoring certain mitigating factors and in using improper items as aggravating factors.
The trial court stated that it found no mitigating factors. Gretchen contends the trial court failed to consider several mitigating circumstances, as required by La. C. Cr. P. art. 894.1. These include her admission of guilt; that she did not use force or pursue the victim; that she was abused and intimidated by her husband and did not know who to turn to because of his connections with the Shreveport Police Department; that she had no friends or family locally; that she is of a young age and unlikely to commit another crime; that she could be rehabilitated by a lesser sentence, and she was not armed during the offense. A review of the record, particularly the PSI report, shows that the trial court did consider many of these mitigating factors, it was simply not persuaded that it should impose a lesser sentence in light of them. Accordingly, this claim is without merit.
Gretchen argues that the trial court failed to consider her allegations that she was abused and intimidated by her husband to the extent that she felt forced to participate in the several crimes. It is noteworthy that these allegations were not presented to the trial court prior to or during her sentencing. Instead, this claim was first presented to the trial court in Gretchen Burford's motion to reconsider her sentence. Be that as it may, the trial court was not convinced that Gretchen was under such control and influence by Kevin that her will was not her own. Stated differently, the court was unpersuaded that Gretchen's allegations of Kevin's abuse, domination and control provided an *1200 excusing or mitigating condition for her culpability in this case.
Our law recognizes varying degrees of culpability or blameworthiness in the commission of crimes, as is evident from the relatively broad discretion sentencing courts have in selecting a sentence from the legislatively created sentencing range. While our law sometimes categorically recognizes diminished culpability in special cases, such as mental retardation, for the most part, these matters are decided on a case-by-case basis depending on the evidence. In this case, the documentation presented on the motion for reconsideration and on appeal has not been introduced as evidence and subjected to trial scrutiny. Accordingly, Gretchen has shown no abuse of discretion by the trial court in not considering belatedly raised claims.
The defendant also argues that the trial court erred in calling Gretchen Burford a "domestic terrorist." While the sentencing court perhaps should not have made such a comment, it obviously reflects the degree to which the court was offended by the callous criminal acts of the defendants. The record does show she was actively involved in a "crime spree" involving armed robberies of a bank, ATM customers, and an attempted armed robbery inside of a home. There is no showing that the trial court's statement constitutes any reversible error.
Gretchen also argues the trial court was in error to consider the dismissed aggravated burglary charge, because her entry into the Mays' home was with Mr. Mays' consent, and therefore her entry with an undeclared felonious intent is not "unauthorized" as required by the definition of burglary, citing State v. Smith, 1998-2078 (La.10/29/99), 748 So.2d 1139, 1143. Since the aggravated burglary could not have been maintained against her, she argues, its dismissal should not have a major consideration in sentencing her.
This argument overlooks the fact Gretchen Burford was also actively involved in Kevin Burford's attempt to force his way into the home. By trying to open the door against the homeowner's wishes, she was clearly a principal in her husband's armed efforts to enter the home to commit a theft therein. The trial court did not abuse its discretion in considering the dismissed charges.
A review of the record shows the PSI alone provided a factual basis to support the trial court's sentence of Gretchen Burford. Also, there is no evidence that the trial court did not comply with La. C. Cr. P. art. 894.1 in sentencing her. A trial court has complete discretion to impose any sentence which is not constitutionally excessive, provided it states for the record the considerations taken into account and the factual basis for the imposition of sentence. State v. Smith, 93-0402 (La.7/5/94), 639 So.2d 237; State v. Woodman, 28,004 (La.App. 2 Cir. 1/24/96), 666 So.2d 1255, writ denied, 96-0489 (La.5/3/96), 672 So.2d 696. If these provisions are met, the reviewing court is limited to the question of constitutional excessiveness. State v. Smith, supra; State v. Walters, 26,647 (La.App. 2 Cir. 12/7/94), 648 So.2d 7. Here, the court properly considered sufficient factors, and adequately stated reasons for sentence. Accordingly, the remaining review is for constitutional excessiveness.
As stated above, constitutional review turns upon whether the sentence is illegal, grossly disproportionate to the severity of the offense or shocking to the sense of justice. State v. White, 37,815 (La.App. 2 Cir.12/17/03), 862 So.2d 1123. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness *1201 of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, supra; State v. Bonanno, supra. A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
We recognize that the 30-year sentence in this case for a first offender is very harsh. However the offense committed in this case was very serious. The trial court's sentence of 30 years at hard labor for a well-planned attempted armed robbery of a home occupied by an elderly and disabled couple, which was but one of a string of armed robberies planned and executed by Gretchen and her husband Kevin, does not shock this court's sense of justice.
By assignment of error number seven, Gretchen argues that the trial court erred in its failure to consider that cost of incarcerating Gretchen Nuss Burford would be approximately $30,000 per year, for a total of $900,000, assuming no increase in cost over the next 30 years, and that this incarceration and cost thereof would serve neither the state nor the victim in this matter.
The defendant argues on the narrow and unique facts of this case, the cost of incarceration for 30 years is a factor which militates in favor of a reduced sentence.
The state argues the trial court found a need for correctional treatment and any lesser sentence would deprecate the seriousness of the defendant's actions.
For the proposition that the trial court erred in not considering the cost of incarceration as a factor to "militate" in favor of a reduced sentence, Gretchen provides no statutory authority requiring a trial court to consider the cost of incarceration in reducing a defendant's sentence. The two cases she cites, State v. Wilson, 37,555 (La.App. 2 Cir. 11/6/03), 859 So.2d 957, writ denied XXXX-XXXX (La.6/4/04), 876 So.2d 73 and State v. Hayes, 97-1526 (La.App. 1 Cir.1999), 739 So.2d 301, writ denied 99-2136 (La.6/16/00), 764 So.2d 955, involve the discussion of life sentences for habitual offenders who had committed relatively minor crimes. In both, the appellate courts, while finding the life sentences to be excessive, noted that it was unfair to taxpayers to pay to incarcerate the two defendants for the rest of their lives. These cases do not support Gretchen Burford's argument that a trial court must consider the cost of incarceration.
This assignment is therefore without merit.
By assignment of error number eight, Gretchen argues that she did not receive the sentence she was promised in that she was told she would not get "a lot of time" if she pled guilty. As stated at the outset of this opinion, the record does not show any evidence of such a promise to induce her to plead guilty, and, this is not a sentencing issue but a question of whether the guilty plea is deficient.[2] In the present case, this court has no evidence in the record to even consider Gretchen Burford's claim of being misled in her plea. This matter should be handled by an application for post conviction relief. La. C. Cr. P. art. 930.

*1202 CONCLUSION
For the foregoing reasons, the defendants' convictions and sentences are affirmed.
AFFIRMED.
APPLICATION FOR REHEARING
Before WILLIAMS, CARAWAY, DREW, MOORE and LOLLEY, JJ.
Rehearing denied.
WILLIAMS, J., would not consider a rehearing.
NOTES
[1] Kevin Burford's appeal of the Caddo Parish armed robbery charge is also before the court on appeal, docket No. 39,801-KA. Although not part of the record in the present appeal, the record in that case shows that during approximately a six-month period, the Burfords burglarized two ATM machines, and did another forced entry and armed robbery of elderly homeowners. In both the ATM robberies, Gretchen Burford, equipped with a police radio, acted as the lookout. In the armed robbery, she searched through the victims' home for money while Kevin Burford held the victims at gunpoint.
[2] A guilty plea is constitutionally infirm when a defendant is induced to enter that plea by what he justifiably believes was a plea bargain, and that bargain is not kept. State v. Dixon, 449 So.2d 463 (La.1984); State v. Anderson, 27,356 (La.App. 2 Cir. 9/27/95), 661 So.2d 542.