925 So.2d 727 (2006)
STATE of Louisiana, Appellee
v.
Jadaw Fermon LAWRENCE, Appellant.
Nos. 40,278-KA, 40,796-KA.
Court of Appeal of Louisiana, Second Circuit.
March 15, 2006.
Rehearing Denied April 5, 2006.
*735 Culpepper & Carroll, PLLC, by Bobby L. Culpepper, Jonesboro, for Appellant.
Robert W. Levy, District Attorney, Clifford R. Strider, III, Stephen K. Hearn, Jr., Assistant District Attorneys, for Appellee.
Before BROWN, GASKINS and DREW, JJ.
GASKINS, J.
The defendant, Jadaw Fermon Lawrence, was convicted of armed robbery and was originally sentenced to serve 25 years at hard labor, without benefit of parole, probation, or suspension of sentence. He was then adjudicated a habitual offender, his original sentence was vacated, and he was sentenced to serve 49½ years at hard labor without benefits. The defendant appealed his conviction and original sentence, and then filed a separate appeal for the habitual offender sentence. The appeals have been consolidated for consideration in this court. For the following reasons, we affirm the conviction and sentence.

FACTS
In the early morning hours of September 20, 2002, three black males robbed the E-Z Mart convenience store located in Ruston, Louisiana. The clerk, Tori Worrall, was in the back of the store and a friend, Korin Adkins, was visiting. The masked perpetrators entered the store; at least two of them were armed. One was wearing a "Scream" mask, another wore a knee-high stocking on his head, and the third wore a mask made from a shirt sleeve with cutouts for eye holes. All wore dark outerwear with white T-shirts. One assailant wore Girbaud jeans with distinctive stitching. Another robber, wearing a Nike T-shirt, pointed a gun at Ms. Adkins and told her to be still and quiet. The third assailant pointed a gun at Mr. Worrall and took the money in the cash register.
The cash register contained one, five, and ten dollar bills. Mr. Worrall had earlier put the twenty dollar bills in the store's vault. The cash register also contained a specially marked dollar bill which was "bait money." When this bill was removed from the cash drawer at 4:44 a.m. during the robbery, it triggered a silent alarm, notifying a private security company that a robbery was in progress.
While the robbery was in progress, a car drove up in front of the store, but soon drove away. At that point, the robbers fled. Mr. Worrall called 911 on his cell phone. The security service began trying to reach the Ruston Police Department as soon as the alarm was received. Contact was made at 4:46 a.m. Also, at that same time, Mr. Worrall's 911 call was received. Police officers were dispatched to the scene.
*736 Officer Henry Wood was working in the zone of the robbery. He and several officers headed toward the store, taking different routes. While traveling on Gilman Street, a short distance from the E-Z Mart, he saw a white car approaching. Earlier in the morning, a Huddle House restaurant had been robbed by three men in a white car who fit the description of the suspects in the E-Z Mart robbery. The white car was the only one the officer had seen on the street at that time.
Officer Wood directed his spotlight into the white car and noticed it contained three black males who matched the description of the perpetrators. The officer stopped the car at 4:48 a.m., two minutes after the police were called. The car was being driven by the defendant who was wearing a Nike T-shirt like that described by the victims as being worn by one of the robbers. The defendant and the other two occupants were removed from the car. In plain view, the officers saw wads of one, five, and ten dollar bills, along with candy bars and cigars which were later determined to have been taken from the E-Z Mart. The defendant and his cohorts were placed under arrest for armed robbery. While searching the passenger compartment of the car for weapons, the officers found the bait money along with masks and other dark clothing.
When the defendant was asked, he did not give permission to search the car, saying that it belonged to his roommate. The roommate was contacted and gave consent to search the vehicle. In the trunk, two guns were found, matching the descriptions of those used in the robbery.
The defendant was tried separately from his codefendants for the armed robbery of the E-Z Mart and was found guilty as charged by a unanimous jury. He was originally sentenced to serve 25 years at hard labor without benefit of parole, probation, or suspension of sentence. The defendant had a previous conviction for attempted manslaughter. He was charged and adjudicated a second felony offender. His 25-year sentence in this matter was vacated and he was sentenced to serve 49½ years at hard labor without benefit of parole, probation, or suspension of sentence. He now appeals his conviction and sentence, arguing numerous assignments of error.

SUFFICIENCY OF THE EVIDENCE
The defendant claims that there was insufficient evidence upon which to base his conviction. He made this assertion in a motion for post-verdict judgment of acquittal and in a motion for new trial. He argued that the jury erred in determining that he was guilty in view of testimony from Mr. Worrall, the clerk of the E-Z Mart store, that he did not think the defendant was one of the robbers.
When issues are raised on appeal, both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.4/2/97), 691 So.2d 347, writ denied, XXXX-XXXX (La.10/17/97), 701 So.2d 1333.
The Jackson v. Virginia standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court *737 with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, XXXX-XXXX (La.10/4/96), 680 So.2d 1165. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App. 2d Cir.8/30/02), 827 So.2d 508, writ denied, State ex rel. Gilliam v. State, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
La. R.S. 14:64 provides, in pertinent part:
Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by the use of force or intimidation, while armed with a dangerous weapon.
In this case, there was sufficient evidence to show that the defendant committed all elements of the offense charged beyond a reasonable doubt. Ms. Adkins testified that she was in the store with Mr. Worrall the morning the robbers entered. She said that the perpetrators were three black males in dark clothing. She thought all three were armed. She described the different masks worn by the assailants.
Ms. Adkins stated that one of the robbers standing closest to her was wearing a Nike T-shirt and a jacket and had a gun. She testified that one gun was black and the other was silver. After the robbery, she drew a picture of one of the guns which was determined to be a 9-millimeter semiautomatic pistol known as a Tech 9. In court, she identified the two guns from the car driven by the defendant as looking like those used in the robbery. She also identified the clothing and masks found in the car, as well as the Nike T-shirt worn by the defendant at the time of his arrest.
Mr. Worrall testified that when the robbers entered the store, he was in the back putting up the mop bucket. When he came out, he saw one of the robbers pointing a gun at him. He detailed how one of the robbers took the money out of the cash register, including the bait money which set off the silent alarm.
Mr. Worrall stated that one of the guns was chrome with a short barrel. The assailant who held a gun on him was wearing a jacket with blue jeans. Mr. Worrall identified the masks recovered from the vehicle driven by the defendant, as well as the Girbaud jeans worn by one of the assailants. He also identified the bait money recovered from the car; it had distinctive indentations. A portion of an E-Z Mart price tag was also affixed to the bill. Mr. Worrall said that he could not tell the race of the robbers. Mr. Worrall stated that he has known the defendant since the fall of 2000 and he did not think that the defendant was one of the robbers.
An official with E-Z Mart testified and positively identified the serial number on the bait money as that taken from the store in the robbery.
In arguing that the evidence is insufficient to support the conviction in this case, the defendant points out that Mr. Worrall did not think the defendant was involved in the offense. The defendant also argues that there was a contradiction between the number of guns testified to by Mr. Worrall and Ms. Adkins, as well as the fact that Mr. Worrall did not see a Tech 9. The defendant also asserts that there are perceived conflicts in the testimony of the victims regarding whether the assailants were wearing light or dark clothing.
In cases in which a defendant claims that he is not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App. 2d Cir.4/12/96), *738 677 So.2d 1008, writ denied, XXXX-XXXX (La.2/21/97), 688 So.2d 520. In this matter, the state has negated any reasonable probability of misidentification. Even though Mr. Worrall did not think that the defendant was involved in this offense, he could not even identify the race of the assailants because they were masked. Ms. Adkins described the Nike T-shirt with a "swoosh" mark on it worn by the assailant who held her at gunpoint. Within two minutes of the robbery, the defendant was apprehended near the store wearing a T-shirt that fit that description, driving a car containing goods and money taken in the robbery. The jury was well within its discretion to accord its own weight to the various parts of the victims' testimony.
Although the two victims could not positively identify the robbers due to the fact that they wore masks, they did provide detailed descriptions of the masks and the clothing worn by the assailants. The victims also described the guns used in the offense. Although Mr. Worrall did not see a Tech 9 gun, Ms. Adkins did and she drew a picture of the gun shortly after the robbery. Within two minutes of the robbery, the defendant and his companions were stopped wearing the clothing described by the victims, and in possession of the masks, guns, and items taken in the robbery. The evidence presented is more than sufficient to support the defendant's conviction of armed robbery.

MOTION TO SUPPRESS
In the trial court, the defendant filed a motion to suppress the evidence against him, asserting that there was no reasonable cause for the initial stop of the vehicle in which he was riding, that the vehicle was searched without his consent or that of the owner, and that there was no emergency justifying a warrantless search of the car.
In a well-reasoned ruling, the trial court found the initial stop was a valid investigatory stop, and the search of the car for weapons was justified for the protection of the officers. The court also noted that items which appeared to be associated with the E-Z Mart robbery were in plain view in the car and that the owner of the car, who was not involved in this offense, gave his consent to search the vehicle.
On appeal, the defendant acknowledges that the owner of the vehicle gave consent to search the car. However, he notes that the suspects were removed from the car at gunpoint and handcuffed after backup officers arrived. Therefore, he claims that there were no exigent circumstances justifying the search of the passenger compartment when the defendants were not in a position to conceal evidence or use a weapon. These arguments are without merit.
In determining whether a ruling on a motion to suppress is correct, an appellate court is not limited to evidence adduced at the hearing on the motion but also may consider pertinent evidence given at trial. State v. Daniels, 614 So.2d 97 (La.App. 2d Cir.1993), writ denied, 619 So.2d 573 (La.1993); State v. Young, 39,546 (La.App. 2d Cir.3/2/05), 895 So.2d 753. A trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Shumaker, 40,275 (La.App. 2d Cir.10/28/05), 914 So.2d 1156.
The Fourth Amendment to the United States Constitution protects "[the] right of people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Similarly, the provisions of the La. Const. art. I, § 5 provide as follows:

*739 Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
It is well settled that a search and seizure conducted without a warrant issued on probable cause is per se unreasonable unless the warrantless search and seizure can be justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Thompson, XXXX-XXXX (La.4/9/03), 842 So.2d 330. When the constitutionality of a warrantless search or seizure is placed at issue by a motion to suppress the evidence, the state bears the burden of proving the admissibility of any evidence seized without a warrant. La. C. Cr. P. art. 703(D). Such exceptions to the warrant requirement include a search incident to a lawful arrest and the plain view doctrine. State v. Stephens, 40,343 (La. App. 2d Cir.12/14/05), 917 So.2d 667.
After making an arrest, an officer has the right to much more thoroughly search a defendant and his wingspan, or lunge space, for weapons or evidence incident to a valid arrest. State v. Sanders, 36,941 (La.App. 2d Cir.4/11/03), 842 So.2d 1260, writ denied, XXXX-XXXX (La.5/14/04), 872 So.2d 516. In Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), the United States Supreme Court held that where an arrestee was arrested in his home, the scope of a search incident to a lawful arrest was the person of the arrestee and the area immediately surrounding him. This rule was justified by the need to remove any weapon the arrestee might seek to use to resist arrest or to escape, and the need to prevent the concealment or destruction of evidence.
In New York v. Belton, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the Supreme Court further elucidated the ruling in Chimel, stating that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile."
In Thornton v. United States, 541 U.S. 615, 124 S.Ct. 2127, 158 L.Ed.2d 905 (2004), the Supreme Court upheld a warrantless search of a car incident to a lawful arrest where the officer initiated contact with the arrestee after he exited his vehicle. At the time of the search, the arrestee was handcuffed and in the back of the patrol car. In Thornton, the court stated that, "There is simply no basis to conclude that the span of the area generally within the arrestee's immediate control is determined by whether the arrestee exited the vehicle at the officer's direction, or whether the officer initiated contact with him while he remained in the car." The Supreme Court further stated:
To be sure, not all contraband in the passenger compartment is likely to be readily accessible to a "recent occupant." It is unlikely in this case that petitioner could have reached under the driver's seat for his gun once he was outside of his automobile. But the firearm and the passenger compartment in general were no more inaccessible than were the contraband and the passenger compartment in Belton. The need for a clear rule, readily understood by police officers and not depending on differing estimates of what items were or were not within *740 reach of an arrestee at any particular moment, justifies the sort of generalization which Belton enunciated. Once an officer determines that there is probable cause to make an arrest, it is reasonable to allow officers to ensure their safety and to preserve evidence by searching the entire passenger compartment. [Footnote omitted.][1]
Thornton, 124 S.Ct. at 2132.
In the present case, in which the defendant and two other individuals were lawfully stopped for questioning, ordered out of the car, and then lawfully arrested for armed robbery, the search of the passenger compartment of the car was valid. Officer Wood had reasonable suspicion to stop the car because the defendant and his companions were observed driving away from the E-Z Mart less than two minutes after the robbery occurred, the car the defendant was driving matched the description of the car used in another robbery earlier that morning, the number of men in the car matched the number of robbers, and the driver was wearing a Nike T-shirt described as being worn by one of the assailants. Based upon these factors, Officer Wood turned around in pursuit of the vehicle which was already pulling over. Officer Wood ordered the defendant driver to get out of the car and lie on the ground. After other officers arrived to assist, the remaining occupants were removed from the car and secured in handcuffs.
Officer Wood had information that guns were used in the E-Z Mart robbery. The officer testified that, even though the defendant and his companions had been handcuffed and removed from the car, the search of the passenger compartment was necessary to secure weapons that might pose a threat if the arrestees happened to get free and attempted to retrieve a weapon. When Officer Wood looked in the passenger compartment of the car for weapons, he saw, in plain view, contraband, including cash, which he reasonably believed had been taken in the robbery.[2] During the search for weapons, the officers discovered not only contraband, but also clothing and masks described by the victims as being used in the robbery.
At the time of the arrest, the search was limited to the passenger compartment of the car. The defendant did not give permission to search the car because he did not own it. The owner of the car was contacted and gave consent to search. At that point, the trunk of the car was *741 searched and the weapons were found. Although the guns were later discovered in the trunk of the car pursuant to a search authorized by the car's owner, the valid wingspan search of the vehicle produced not only money, but other articles taken from the store, as well as the clothing and masks worn by the assailants. Based upon the probable cause to arrest, the officers were reasonable in searching the passenger compartment for guns and other evidence of the crime. Under these circumstances, in which the occupants of the car were thought to be armed, the search of the passenger compartment of the car is clearly allowed by Belton and Thornton.[3]
The defendant has failed to demonstrate that the searches in this case violated his constitutional rights in any way. The trial court correctly denied the defendant's motion to suppress the evidence against him.

MOTION TO SEVER
The defendant was originally charged with his two codefendants. On the day of trial, the state moved to sever the indictments and to try the defendant separately. The trial court granted the state's motion to sever and the defendant objected. After his conviction, the defendant filed a motion in arrest of judgment, alleging that the bill of information was illegally severed immediately before trial, and that the bill of information was defective because an essential averment was omitted. The motion was denied by the trial court. On appeal, the defendant argues that the trial court erred in trying him separately, in granting the state's motion to sever, in denying the defendant's plea of unconstitutionality, in denying the defendant's motion to consolidate, and in denying his motion in arrest of judgment. These arguments are without merit.
La. C. Cr. P. art. 61 provides that, "Subject to the supervision of the attorney general, as provided in Article 62, the district attorney has entire charge and control of every criminal prosecution instituted or pending in the district, and determines whom, when, and how he will prosecute." La. C. Cr. P. art. 704 provides, in pertinent part, that jointly indicted defendants shall be tried jointly unless the state elects to try them separately, or the court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance. The defendant acknowledges the right of the state to elect to try defendants separately. He simply argues that in this case, choosing to sever on the day of trial denied him the right to a fair trial and due process. However, he does not set forth how his rights were violated or how he was prejudiced.
Regarding the motion in arrest of judgment, the defendant has failed to show that the bill of information was defective due to its amendment to sever the codefendants. There is no showing that the trial court abused its discretion in denying the defendant's motion to consolidate the three defendants for trial.

*742 MOTION FOR NEW TRIAL
The defendant filed a motion for new trial, alleging prejudicial conduct concerning one of the jurors and the defendant's mother. At the hearing on the motion, the defense offered testimony in support of its claim. This argument is without merit.
Motions for new trial are governed by La. C. Cr. P. art. 851 which provides in pertinent part:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
The court, on motion of the defendant, shall grant a new trial whenever:
. . . .
(4) The defendant has discovered, since the verdict or judgment of guilty, a prejudicial error or defect in the proceedings that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before the verdict or judgment; or
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
After the trial, Mary Ann Webb, the mother of the defendant, wrote a letter to defense counsel claiming that during a trial recess, she was approached by one of the jurors. The juror allegedly gave Ms. Webb a slip of paper with a phone number on it. According to Ms. Webb, when she talked with the juror on the phone later that evening, the juror said that she would not vote against the defendant and would try to convince the other jurors to do the same. Ms. Webb claimed that the juror told her that she was a single mother and that any monetary contributions she could make for this "favor" would be greatly appreciated. After the defendant was found guilty, Ms. Webb claimed that the juror came to her, hugged her, and said that she was sorry, but that in spite of her vast attempts, she could not sway any of the jurors' votes. Ms. Webb claimed that the juror contacted her about two weeks later and said that she asked the judge to "go light" in sentencing the defendant, but that the judge stressed that she does not have mercy on felons or men who fail to pay child support. Ms. Webb claimed that it was during this second conversation that she realized the wrongfulness of the juror's actions.
Ms. Webb also testified at the hearing for the motion for new trial. She could not remember the name of the juror and gave a very general description of her. She claimed that she did not pay the juror anything. The record was left open for further investigation of the claims. Prior to sentencing, the trial court denied the motion for new trial.
In any jury trial, there is a presumption of impartiality. However, any unauthorized communication, contact, or tampering directly or indirectly, made by a nonjuror with a juror during a trial about the matter pending before the jury is deemed presumptively prejudicial, if not made in accordance with the rules of court and the instructions and directions of the court made during the trial, with full knowledge of all the parties. The presumption is not conclusive, but the burden rests heavily upon the state to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant. Prejudice may be shown by evidence that an extrinsic factual matter tainted the jury's deliberations. Thus, an adequate demonstration of extrinsic influence upon the jury overcomes *743 the presumption of jury impartiality and shifts the burden to the state to show that the influence demonstrated was not prejudicial. State v. Sanders, 33,778 (La. App. 2d Cir.10/4/00), 769 So.2d 183; State v. Flanagan, 31,497 (La.App. 2d Cir.12/9/98), 724 So.2d 817.
The trial court denied the motion for new trial, stating that the allegations were conclusory and without any specificity, and that the defendant failed to allege or show prejudice. The court found it significant that, in light of the allegations, the defendant was convicted by a unanimous jury verdict, when it required only a 10-2 verdict to convict. The court stated that this situation could have been brought to the court's attention during the trial and the juror could have been excused at that point.
The evidence presented failed to show that any inappropriate contact occurred between the juror and the defendant's mother or that the defendant was prejudiced. Ms. Webb claimed that she had two telephone conversations with the juror, as well as talking with her in person during the trial. However, Ms. Webb could not remember the juror's name. Also, incredibly, Ms. Webb claims that she did not realize until after her son was convicted that the alleged contact with the juror was inappropriate, even though she asserts that the juror asked for a "contribution" to try to sway the jury. Further, although Ms. Webb maintained that the juror said that she would not vote against the defendant and would try to influence the jury in the defendant's favor, he was convicted in a unanimous jury verdict. The trial court obviously found Ms. Webb's contentions not to be credible and discounted her testimony. Under these circumstances, we find that the trial court did not abuse its discretion in denying the motion for new trial.

BATSON CHALLENGE
The defendant argues that the trial court erred in denying his challenge to the jury selection process under Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). He claims that the trial court erred in finding that he failed to establish a prima facie case of purposeful discrimination. This argument is without merit.
The United States Constitution prohibits the state from engaging in purposeful discrimination on the grounds of race in the exercise of peremptory challenges. Batson v. Kentucky, supra. Louisiana law codifies the Batson ruling in La. C. Cr. P. art. 795(C), which provides:
C. No peremptory challenge made by the state or the defendant shall be based solely upon the race of the juror. If an objection is made that the state or defense has excluded a juror solely on the basis of race, and a prima facie case supporting that objection is made by the objecting party, the court may demand a satisfactory racially neutral reason for the exercise of the challenge, unless the court is satisfied that such reason is apparent from the voir dire examination of the juror. Such demand and disclosure, if required by the court, shall be made outside of the hearing of any juror or prospective juror.
When a defendant makes a Batson challenge, claiming the state has used peremptory challenges in a manner which violates the Equal Protection Clause, the defendant must first make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of a juror's race. State v. Qualls, 40,630 (La.App. 2d Cir.1/27/06), 921 So.2d 226. A defendant satisfies the requirements of Batson's first step by producing evidence sufficient to permit the trial *744 judge to draw an inference that discrimination has occurred. Johnson v. California, 545 U.S. 162, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005); State v. Price, 40,408 (La.App. 2d Cir.12/16/05), 917 So.2d 1201. If the defendant fails to make a prima facie case, then the challenge fails. See State v. Green, XXXX-XXXX (La.5/22/95), 655 So.2d 272. If a prima facie case is established, the burden shifts to the state to come forward with a race-neutral explanation for its peremptory challenges. Hernandez v. New York, 500 U.S. 352, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991); Batson v. Kentucky, supra; State v. Green, supra.
When the defendant made a Batson challenge, the trial court held a hearing on that claim. The state stipulated that it exercised eight peremptory challenges, five of which were to black jurors and three were against white jurors. The state exercised challenges as to white jurors while black jurors were seated on the jury; therefore, no pattern of exclusion was established. The court noted that the racial makeup of the jury was close to the composition of the jury venire. The court found that there was no prima facie showing that the prosecution exercised peremptory challenges on the basis of race.
The Louisiana Supreme Court recently stated that it is not convinced that the "numbers alone" establish a prima facie showing of discrimination. The trial court is in a position to observe firsthand the demeanor of the attorneys and the venire persons, the nuances of questions asked, the racial composition of the venire, and the general atmosphere of the voir dire that simply cannot be replicated from a cold transcript. State v. Juniors, 2003-2425 (La.6/29/05), 915 So.2d 291; State v. Meyers, XXXX-XXXX (La.4/11/00), 761 So.2d 498. Based upon the record before us, there is no showing that the trial court abused its discretion in denying the defendant's Batson challenge.

JUROR CHALLENGES
The defendant claims that the trial court erred in granting two challenges for cause to prospective jurors raised by the state and in denying two challenges for cause raised by the defendant. These arguments are without merit.
In trials of offenses punishable by death or necessarily by imprisonment at hard labor, each defendant shall have 12 peremptory challenges, and the state 12 for each defendant. La. C. Cr. P. art. 799. Armed robbery is necessarily punishable by hard labor. La. R.S. 14:64(B).
The erroneous allowance to the state of a challenge for cause does not afford the defendant a ground for complaint, unless the effect of such a ruling is the exercise by the state of more peremptory challenges than it is entitled to by law. La. C. Cr. P. art. 800. In the present case, the state exercised only eight of its 12 peremptory challenges. Therefore, the defendant has no ground to object to the granting of two challenges for cause in favor of the state. State v. Williams, 34,359 (La.App. 2d Cir.5/9/01), 786 So.2d 203, writ denied, 2001-2275 (La.5/10/02), 815 So.2d 835; State v. Joe, 28,198 (La.App. 2d Cir.7/26/96), 678 So.2d 586, writ denied, XXXX-XXXX (La.10/31/97), 703 So.2d 16. Whether the court erred is not material under these circumstances, since the state did not gain extra peremptory challenges. State v. Williams, supra.
The defendant also argues that the trial court erred in refusing to grant two of his challenges for cause as to prospective jurors. La. C. Cr. P. art. 797 provides:
The state or the defendant may challenge a juror for cause on the ground that:

*745 (1) The juror lacks a qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the district attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the court; or
(5) The juror served on the grand jury that found the indictment, or on a petit jury that once tried the defendant for the same or any other offense.
A trial judge is afforded great discretion in determining whether cause has been shown to reject a prospective juror. Such determinations will not be disturbed on appeal unless a review of the voir dire as a whole indicates an abuse of discretion. State v. Thompson, 39,454 (La. App. 2d Cir.3/2/05), 894 So.2d 1268.
The first challenge for cause raised by the defendant was to prospective juror Marcie Ramsey who stated that she had child care concerns regarding her 14-month-old child. The court noted that Ms. Ramsey had relatives and that day care options were available. The defendant then exercised a peremptory challenge as to Ms. Ramsey. We find that the trial court did not abuse its vast discretion in denying the challenge for cause.
The next challenge for cause by the defendant was to prospective juror Norma Schodlatz. The record shows that, initially, Ms. Schodlatz stated that she thought the defendant should testify. However, on further questioning, she clearly said several times that she would not hold it against the defendant if he did not testify and would give him the full benefit of his legal right not to testify. The defendant's challenge for cause as to Ms. Schodlatz was denied by the trial court. The court stated that Ms. Schodlatz was very clear that she would accept the law and would not hold the defendant's failure to testify against him. The defendant then exercised a peremptory challenge to this juror.
A challenge for cause is not warranted where a prospective juror has volunteered an opinion seemingly prejudicial to the defense, but subsequently on further inquiry has demonstrated the ability and willingness to decide the case impartially according to the law and evidence. State v. Thompson, supra. Under the facts presented, we find that the trial court did not abuse its discretion in failing to grant the defendant's challenge for cause as to Ms. Schodlatz.

MOTIONS FOR MISTRIAL
The defendant argues that the trial court erred in denying two motions for mistrial filed during the course of the trial. In the first instance, the defendant objected to a reference by the testifying police officer to a white automobile. The second motion for mistrial was made when the prosecution placed a box in view of the jury that was labeled in connection with the Huddle House robbery. The defendant contends that both instances constituted references to impermissible "other crimes" evidence. These arguments are without merit.
*746 La. C.E. art. 404 provides that evidence of other crimes, acts or wrongs is generally not admissible. When a witness refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible, upon request of the defendant, the defendant's remedy is a request for an admonition or a mistrial pursuant to La. C. Cr. P. art. 771. State v. McGee, 39,336 (La.App. 2d Cir.3/4/05), 895 So.2d 780.
La. C. Cr. P. art. 771 provides in pertinent part that the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury when the remark or comment is made by a witness or person other than the judge, district attorney, or a court official, regardless of whether the remark or comment is within the scope of La. C. Cr. P. art. 770. In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.
Because a mistrial is a drastic remedy, it should be granted only when the error results in substantial prejudice sufficient to deprive the defendant of any reasonable expectation of a fair trial. The decision to grant or deny a mistrial for prejudicial conduct rests within the trial court's discretion and will not be disturbed absent clear abuse of discretion. State v. McGee, supra; State v. Cotton, 29,101 (La. App. 2d Cir.1/22/97), 687 So.2d 1074.
The record shows that the trial court did not abuse its discretion in denying the defendant's two motions for mistrial. Regarding the references to the white car, on cross-examination, defense counsel questioned Officer Wood as to whether he would have shined a flashlight into the red van belonging to defense counsel's wife if he had seen that vehicle in the area of the robbery on the morning of the defendant's arrest. The officer responded that he would have.
It was the defense attorney who instigated a discussion about stopping a vehicle of a different color. On redirect, the state asked the officer about that question and response and then asked if there was any additional significance of a white car that morning. After the officer responded affirmatively, the state immediately ceased questioning. No evidence regarding the connection of the white car with the Huddle House robbery was placed before the jury.
Generally, ambiguous or obscure references to other crimes made without explanation or elaboration do not prejudice the defendant. State v. Brooks, 40,186 (La.App. 2d Cir.10/26/05), 914 So.2d 110, 114. Officer Wood's statement did not refer to any prior conviction or relate to any specific criminal conduct. The reference to the white car was ambiguous and obscure. This fact is reflected by the trial court's statement:
I don't understand the significance of the white car or the red car but I'm just gonna instruct you if the white or the red car involves any other crimes then I'm gonna instruct you not to bring it up and instruct all of your witnesses not to discuss anything about a white or a red car that would refer to any other crime other than the one that we're discussing here.
When the defendant objected, the trial court warned the parties not to raise other crimes evidence, and the state ended its questioning of that witness. In light of these factors, the trial court did not err in *747 refusing to grant the defendant's motion for mistrial.
Regarding the box labeled "Armed Robbery Huddle House E-Z Mart," when the defendant raised an objection to the presence of the box, the court determined that the box had just been put on a table in view of the jury and that it would be removed immediately. The court noted that previously the box had been on the floor with a bar between the box and the jury and that the lettering was not very large. The court stated, "I don't find that it was in any way put in front of the jury." The court also noted that the box only had lettering on two sides and it was not clear which side was facing the jury.
There is no showing that the trial court's findings were an abuse of discretion. The box was introduced into evidence. An examination reveals that the handwriting on the box is less than one inch high. The lettering was done with a regular pen as opposed to a thick marker. Therefore, the writing is not easily seen from a distance. There is no evidence in the record that the handwriting would have been visible to the jury. The trial court did not err in denying the motion for mistrial regarding the box.

ADMISSIBILITY OF GUN
The defendant contends that the trial court erred in allowing into evidence a revolver when the seizing officer said he could not read the serial number and in admitting the weapon without the proper chain of evidence. This argument is without merit.
Inspector Jay Kavanaugh searched the trunk of the car and recovered the guns found there. At trial, Inspector Kavanaugh was questioned regarding the recovery of the weapons, how they were placed into evidence bags and dusted for finger-prints. He was then asked to identify the Tech 9 revolver. Inspector Kavanaugh stated that it was one of the weapons he seized from the car, but he had trouble reading the serial number in the light in the courtroom. When the state sought to introduce the weapon into evidence, the defendant objected, arguing that a proper chain of custody had not been established. The trial court overruled the objection and allowed the introduction of the gun, reasoning that the gun was distinctive enough to be identified by the officer as the same gun seized from the trunk of the car the defendant was driving.
To be admissible at trial, demonstrative evidence must first be identified. La. C.E. art. 901. Identification can be visual or by chain of custody of the object. The identification need not be absolute, certain or wholly unqualified. State v. Cosey, 1997-2020 (La.11/28/00), 779 So.2d 675, cert. denied, 533 U.S. 907, 121 S.Ct. 2252, 150 L.Ed.2d 239 (2001). Where there is some evidence for identification purposes, the objection to the sufficiency goes to the weight rather than admissibility. For admission, it suffices if the preponderance of the evidence establishes it is more probable than not the object is connected with the case. State v. Mills, 505 So.2d 933 (La.App. 2d Cir.1987), writ denied, 508 So.2d 65 (La.1987). The record fails to show that there is any question that the gun admitted into evidence was the one seized by the officer. The trial court did not err in overruling the defendant's objection.

STATE'S CLOSING STATEMENT
The defendant claims that the trial court erred in overruling his objection to the state's closing argument. In closing, the state referred to the testimony of Mr. Worrall that the defendant was not involved in this offense. However, the state *748 noted that the witness had not been "through the Voir Dire or education that you've been through." The defendant argues that the statement was outside the scope of appropriate closing argument and was highly prejudicial to the defendant in attempting to attack the credibility of the main witness to the robbery who had unequivocally testified that the defendant was not one of the perpetrators.
La. C. Cr. P. art. 774 provides in pertinent part:
The argument shall be confined to evidence admitted, to the lack of evidence, to conclusions of fact that the state or defendant may draw therefrom, and to the law applicable to the case.
The district attorney is afforded considerable latitude in making a closing argument to the jury. A district attorney may express an opinion about the defendant and/or the evidence presented by the defendant when it is apparent that the opinion is based upon the evidence of record. Commenting on the credibility of the witnesses is proper and within the scope of closing argument. State v. Mims, 39,757 (La.App. 2d Cir.6/29/05), 907 So.2d 237. Based upon the record before us, we do not find that the trial court erred in overruling the defendant's objection.

TESTIMONY OF MARK PATRICOLA
The defendant argues that the trial court erred in refusing to strike the testimony of Mark Patricola, one of the state's witnesses. This argument is without merit.
Mr. Patricola was the installation service manager for the company providing the security system in the E-Z Mart. He testified regarding the type of equipment used in the store, as well as the procedures for triggering the alarm and contacting the police once an alarm is received. Mr. Patricola established the actual times that the alarm was received in this case and the police were contacted, testifying from a computer printout which recorded that information. On cross-examination, the defendant questioned whether Mr. Patricola knew the location of the computer that generated the report. When he said he was not sure where the computer was located, defense counsel moved to strike his testimony as not within his personal knowledge. The trial court denied the motion to strike.
The trial court did not err in refusing to strike the testimony of this witness. La. C.E. art. 803(6), regarding business records, provides in pertinent part:
(6) Records of regularly conducted business activity. A memorandum, report, record, or data compilation, in any form, including but not limited to that which is stored by the use of an optical disk imaging system, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if made and kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make and to keep the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. This exception is inapplicable unless the recorded information was furnished to the business either by a person who was routinely acting for the business in reporting the information or in circumstances under which the statement would not be excluded by the hearsay rule. The term "business" as used in this Paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether *749 or not conducted for profit. Public records and reports which are specifically excluded from the public records exception by Article 803(8)(b) shall not qualify as an exception to the hearsay rule under this Paragraph.
Mr. Patricola's testimony on this issue was solely limited to information on how the security system operated, how the alarm was triggered during the robbery, and what measures were taken to contact the police. Regarding the time at which the alarm was received and police were notified, he relied upon a record made in the regular course of business of the security company. He was a qualified witness to testify in this regard and there is no indication of a lack of trustworthiness of the information. Not knowing the exact location of the computer that generated the information fails to negate the fact that the witness was testifying regarding the record of a regularly conducted business activity. The time the police were contacted was verified at trial by the communications officer with the Ruston Police Department. The trial court did not err in denying the defendant's motion to strike.

HEARSAY EXCEPTION TO TESTIMONY OF NATALIE TAYLOR
The defendant argues that the trial court erred in overruling his hearsay exception to the testimony of Natalie Taylor, the police communications officer who received the 911 call and the call from the security company regarding the robbery, dispatched police to the scene, and recorded the stop by the police of the defendant's vehicle within two minutes of contacting the patrol officer. This argument is without merit.
At trial, the defendant objected to Ms. Taylor's testimony as hearsay. The state argued that the content of her testimony was a contemporaneous record made during the course of her duties with the Ruston Police Department. La. C.E. art. 803(8) provides, in pertinent part, an exception to the hearsay rule:
8) Public records and reports. (a) Records, reports, statements, or data compilations, in any form, of a public office or agency setting forth:
(i) Its regularly conducted and regularly recorded activities;
(ii) Matters observed pursuant to duty imposed by law and as to which there was a duty to report;
In this case, Ms. Taylor testified regarding the times that the 911 call and the call from the security company were received, the time the police were dispatched, and when they reported making a stop. All these matters were recorded in a log by Ms. Taylor in the regular course of her employment and duties with the police department. The trial court did not err in allowing the testimony.

COPY OF 911 TAPE
The defendant argues that the district court erred in allowing into evidence a copy of the tape recording of the 911 call made in connection with this offense. This argument is without merit.
The defendant points out that, at trial, Ms. Taylor stated that the 911 tape was a copy of the original. The defendant contends that, under La. C.E. art. 1002, to prove the content of a recording, the original recording is required except as otherwise provided by the Code of Evidence or other legislation. The record shows that when the state sought to introduce the copy of the tape, the defendant objected on the grounds of lack of foundation, hearsay, and lack of proper chain of custody. The defendant never complained that the tape was a copy of the original. Because *750 this objection was not argued in the trial court, it is not properly before this court on appeal.
However, even if this argument were properly before the court, La. C.E. art. 1003 provides in pertinent part that a duplicate is admissible to the same extent as the original unless a genuine question is raised as to the authenticity of the original or in the circumstances it would be unfair to admit the duplicate in lieu of the original. No such questions have been raised in this case. See State v. Joe, supra.
In connection with this assignment of error, the defendant also argues that the trial court erred in allowing the tape into evidence under the excited utterance exception to the hearsay rule. The defendant contends that there was no testimony about the time frame involved from the time of the robbery until the 911 call was made to evaluate whether the tape comes under the restrictions of the excited utterance exception.
La. C.E. art. 803(2) provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
The record shows that the 911 call and the notification from the security company were received by the police department at the same time, showing that Mr. Worrall's call occurred immediately after the robbery. Ms. Taylor testified that the person making the 911 call was very excited. Under these circumstances, the trial court did not err in overruling the defendant's hearsay exception.

ADMISSIBILITY OF PHOTOGRAPHS
The defendant argues that the trial court erred in admitting into evidence photographs of the defendant and his companions taken immediately after their arrests for this offense. The defendant contends that the state failed to provide a proper foundation for the admissibility of the photographs. He argues that there was no testimony as to when the photographs were taken or by whom. He also objects that the pictures show handcuffs and tattoos. This argument is without merit.
A trial court has great discretion in admitting photographs and the decision to admit photographs will not be overturned absent an abuse of discretion. State v. Gay, 29,434 (La.App. 2d Cir.6/18/97), 697 So.2d 642. The foundation for the introduction of a photograph can be satisfied when a witness identifies the photograph as accurately depicting the scene it purports to represent. State v. Stewart, 530 So.2d 1263 (La.App. 2d Cir. 1988).
In the present case, the photographs were admitted during the testimony of Officer Wood who arrested the defendant and his companions. The officer responded that the photographs accurately represented the appearance of the defendants at the time of their arrest. This testimony was probative to show that the officer stopped the defendant and the others in the car with him because they fit the descriptions given by the victims of the robbery. Inspector Kavanaugh later testified that he took the photographs shortly after the defendant's arrest.
The mere fact that a defendant is in handcuffs in a photograph is not unduly prejudicial. See State v. Jackson, 584 So.2d 266 (La.App. 1st Cir.1991), writ denied, 585 So.2d 577 (La.1991). The trial court did not err in allowing the photographs to be admitted into evidence.

*751 TESTIMONY OF INSPECTOR KAVANAUGH
The defendant argues that the trial court erred in allowing the repetitive testimony of Inspector Kavanaugh regarding photographs of the car and in allowing him to read aloud the serial number from the bait money several times. These arguments are without merit.
La. C.E. art. 403 provides that, although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time. The photographs at issue in this argument were of the trunk of the car and the guns contained therein. At trial, the state contended that the questions regarding the pictures were required to orient the jury as to what portion of the car they were looking at. When the defense objected to the repetitive nature of the questions, the state replied that it was, in fact, trying to save the jury some time in understanding exactly what the photographs depicted.
Inspector Kavanaugh was also asked to read the serial number of the bait money several times. The defendant objected to the repetitive nature of the question. Although the objection was overruled, the state then moved on with its questioning.
The defendant has failed to show that the questions regarding these photographs or the serial number of the bait money caused unfair prejudice, confusion of the issues, or misled the jury. The trial court did not err in denying the defendant's objections.

IDENTIFICATION OF THE BAIT MONEY
The defendant argues that the trial court erred in admitting into evidence "State's Exhibit No. 22" without a proper foundation. This argument is without merit.
The defendant contends that, during the testimony of Patsy Pringle, the area supervisor of the E-Z Mart chain, she was allowed to testify regarding the serial number of the bait money from an internal audit report prepared by others who were not called to testify at trial. Further, the defendant notes that the report was made in June 2002, rather than September 2002, when the offense occurred. Therefore, he argues that the evidence is not relevant.
The record shows that the internal audit report was used by the witness to refresh her memory, but was not filed into evidence. "State's Exhibit No. 22" is a sheet of paper bearing only the serial number of the bait money. At trial, Ms. Pringle verified the serial number as that on the bait money and she initialed the sheet of paper. The defendant did not object to the introduction of this exhibit. Ms. Pringle then identified the actual bait money.
Further, although the internal audit report was discussed with Ms. Pringle, the defendant did not object at trial to the fact that the report was dated June 2002. Therefore, any argument regarding the introduction of this exhibit is not properly before this court. La. C. Cr. P. art. 841.

NOTES OF TORI WORRALL
The defendant argues that the trial court erred in allowing Tori Worrall to make notations regarding the sequence of events in this case on an exhibit in front of the jury. The defendant simply makes this bare assertion in brief, but acknowledges that there is no statutory or jurisprudential authority to support this argument. We find no error in the trial court's ruling.

*752 HABITUAL OFFENDER ADJUDICATION AND SENTENCE
Following his conviction for armed robbery, the court sentenced the defendant to serve 25 years at hard labor without benefit of parole, probation, or suspension of sentence. The defendant was then adjudicated a second felony offender, his prior sentence was vacated, and he was resentenced to serve 49½ years at hard labor, without benefit of parole, probation, or suspension of sentence. The defendant now urges several assignments of error objecting to his adjudication and sentence as a habitual offender.[4]

Double Jeopardy
The defendant argues that the trial court erred in applying the habitual offender statute in this case, "considering the double jeopardy ramifications." The defendant contends that double jeopardy prohibits the second enhancement of his sentence under the habitual offender statute because the original sentence was enhanced due to the use of a firearm in the offense. This argument is without merit.
The defendant is mistaken in arguing that his original sentence was enhanced because of the use of a firearm. La. R.S. 14:64.3 provides that when the dangerous weapon used in the commission of an armed robbery is a firearm, the offender shall be imprisoned for an additional period of five years without benefit of parole, probation, or suspension of sentence, to be served consecutively to the sentence imposed under La. R.S. 14:64.
Prior to trial, the state filed a notice of intent to seek enhancement of sentence under La. R.S. 14:64.3 in the event of a conviction. In originally sentencing the defendant, the trial court did not impose the enhanced penalty. The original sentence was then vacated prior to the imposition of the habitual offender sentence. When the defendant was sentenced as a habitual offender, the court imposed the minimum sentence available for a second felony offender convicted of armed robbery under La. R.S. 14:64. The court did not include any enhancement under La. R.S. 14:64.3. The defendant has simply failed to demonstrate any double jeopardy ramifications as a result of his sentence as a habitual offender.[5]

Validity of the Predicate Offense
The defendant argues that the trial court erred in finding that the predicate *753 offense in the habitual offender bill was valid for the purposes of enhancement of the sentence, raising numerous alleged deficiencies. These arguments are without merit.
The burden of proving the validity of a prior guilty plea in a habitual offender proceeding was set forth in State v. Shelton, 621 So.2d 769 (La.1993):
If the defendant denies the allegations of the bill of information, the burden is on the State to prove the existence of the prior guilty pleas and that defendant was represented by counsel when they were taken. If the State meets this burden, the defendant has the burden to produce some affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of the plea. If the defendant is able to do this, then the burden of proving the constitutionality of the plea shifts to the State. The State will meet its burden of proof if it introduces a "perfect" transcript of the taking of the guilty plea, one which reflects a colloquy between judge and defendant wherein the defendant was informed of and specifically waived his right to trial by jury, his privilege against self incrimination, and his right to confront his accusers. If the State introduces anything less than a "perfect" transcript, for example, a guilty plea form, a minute entry, an "imperfect" transcript, or any combination thereof, the judge then must weigh the evidence submitted by the defendant and by the State to determine whether the State has met its burden of proving that defendant's prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights. [Footnotes omitted.]
In order to carry its burden of proving that the defendant had been formerly convicted of attempted manslaughter, the state introduced certified copies of the bill of information and the transcript of the guilty plea entered in 1998, the minutes of the court, and the testimony of the parole officer who supervised the defendant in Lincoln Parish. As discussed below, the state carried its burden of proof in this matter.

Boykin Rights
The defendant was charged as a habitual offender under La. R.S. 15:529.1. The habitual offender bill of information charged that the defendant had a prior conviction for attempted manslaughter in 1998, as well as the present conviction. The 1998 conviction resulted from a guilty plea entered in East Baton Rouge Parish. The defendant claims that the guilty plea for attempted manslaughter, used as a predicate for the enhancement of the present sentence, was not valid because he was not adequately informed of his Boykin rights. The record does not support this argument. The certified copy of the minutes from the defendant's guilty plea to attempted manslaughter, entered on June 15, 1998, shows that the defendant was clearly informed of his right to trial, his right against self-incrimination and his right of confrontation. Further, the defendant stated that he understood those rights and made a knowing and voluntary waiver of them.

Right to Counsel
The defendant argues that in the 1998 guilty plea, the court did not inform him of his right to counsel and his right to counsel on appeal. The record shows that the defendant was represented by counsel at the guilty plea. Although the defendant also complains that the court failed to inform him that he had the right to counsel on appeal, neither Boykin nor La. C. Cr. P. art. 513 requires the court to inform the defendant of his right to counsel on appeal. *754 State v. Deshotel, XXXX-XXXX (La.App. 1st Cir.2/23/99), 730 So.2d 994. The defendant has failed to demonstrate any deficiency in the predicate plea in this regard.

Knowing and Intelligent Plea
The defendant argues that the trial court erred in finding that his prior plea of guilty in 1998 was knowing and voluntary. Our review of the record in this case, which includes a certified copy of the guilty plea transcript in 1998, shows that the guilty plea colloquy was extremely detailed and demonstrates that the defendant's plea was clearly made knowingly, intelligently, and voluntarily.

Amendments to Bill of Information
The defendant argued in the trial court that the bill of information forming the basis of his 1998 plea to attempted manslaughter was defective due to amendments made to it. The trial court rejected that argument and the defendant claims that this alleged error is one factor contributing to the invalidity of the predicate offense. This argument is without merit.
In the 1998 case, the defendant and a codefendant were each charged with two counts of attempted second degree murder and two counts of conspiracy to commit second degree murder. In exchange for his guilty plea to one count of the reduced charge of attempted manslaughter, the other charges against the defendant were dismissed. The amendment to the original bill of information simply specified which count of attempted second degree murder applied to the defendant. The defendant has failed to demonstrate any defects in the bill of information rendering the guilty plea invalid.

Use of Guilty Plea as Predicate for Future Habitual Offender Adjudication
In the trial court, the defendant objected that, when he entered his plea of guilty in 1998 to attempted manslaughter, he was not adequately informed that the guilty plea could be used later as a predicate offense to charge him as a habitual offender. The transcript of the 1998 guilty plea shows that the trial court informed the defendant, "Now you understand that when you plead guilty to this felony count, your guilty plea can be used to enhance penalties imposed upon conviction or guilty plea on a future felony as an habitual offender under Louisiana law?" The defendant stated that he understood. The trial court in the present case correctly rejected the defendant's argument in this regard.

IDENTITY OF DEFENDANT AT HABITUAL OFFENDER HEARING
The defendant argues that the trial court erred in finding that the state met its burden of proof regarding the identity of the defendant at the habitual offender hearing. This argument is without merit.
To obtain a multiple offender conviction, the state is required to establish the prior felony conviction and that the defendant is the same person convicted of the offense. Various methods are available to prove that the defendant on trial is the same person convicted of each felony offense, such as the testimony of witnesses, expert opinion as to the fingerprints of the accused when compared to those of the person previously convicted, photographs contained in the duly authenticated record, or evidence of identical driver's license number, sex, race, and date of birth. The mere fact that the defendant on trial and the person previously convicted have the same name does not constitute sufficient evidence of identity. State v. Robinson, 34,383 (La.App. 2d Cir.2/28/01), *755 780 So.2d 1213, writ denied, XXXX-XXXX (La.3/28/02), 812 So.2d 642.
As discussed above, the state presented adequate proof to establish the prior felony conviction. The state also presented adequate proof that the defendant was the same person who entered the plea of guilty to attempted manslaughter in East Baton Rouge Parish in 1998.
Theresa Moen, a probation and parole officer, testified at trial that she supervised the defendant for an attempted manslaughter conviction which was entered in East Baton Rouge Parish. The defendant's probation was transferred from East Baton Rouge Parish to Lincoln Parish. She stated that the case file name was "Jadaw Lawrence." She positively identified the defendant in court as the person she supervised. The defendant was still on probation when he committed the present offense. The testimony of a probation and parole officer may be used to establish the identity of a defendant in a habitual offender proceeding. See State v. Keys, 29,369 (La.App. 2d Cir.5/7/97), 694 So.2d 1107, writs denied, XXXX-XXXX, XXXX-XXXX (La.10/31/97), 703 So.2d 21; State v. Robinson, supra; State v. Young, 27,237 (La.App. 2d Cir.8/23/95), 660 So.2d 548; State v. Tilmon, 38,003 (La.App. 2d Cir.4/14/04), 870 So.2d 607, writ denied, 2004-2011 (La.12/17/04), 888 So.2d 866.[6]
As pointed out by the trial court, this testimony, along with the certified copies of the bill of information, minutes, and transcript of the guilty plea, was competent proof of the defendant's identity as the person who entered the plea of guilty to the charge of attempted manslaughter.
The defendant points out in this case that the state also fingerprinted the defendant at the habitual offender hearing and sought to have an expert match the fingerprints with those on the bill of information on the prior conviction. The state then failed to come forward with any proof regarding the fingerprints. The defendant urges that this raises the inference that the defendant was not the person convicted in East Baton Rouge Parish of attempted manslaughter.
While this is indeed troublesome, it does not negate the fact that Ms. Moen testified unequivocally that she supervised this defendant for the attempted manslaughter conviction arising out of East Baton Rouge Parish. The better practice would have been for the state to explain, on the record, the absence of testimony regarding the fingerprints. However, defense counsel was present when the fingerprint expert was excused to compare the defendant's fingerprints with those on the prior bill of information. The defense counsel neither questioned the failure of the state to present these results nor suggested that he did not know why this evidence was not presented. This omission at the trial court level prohibits raising the complaint for the first time on appeal. Limited to the facts presented in this case, we find that the trial court did not err in finding that the state adequately established the defendant's identity in the habitual offender proceeding.

EXCESSIVE SENTENCE
The defendant argues that his sentence to serve 49½ years at hard labor without benefits is excessive. He claims that the trial court placed undue emphasis *756 on the fact that the present offense was a crime of violence. He points out that no shots were fired in this offense and no one was injured. He contends that, in effect, this sentence will require his incarceration for the remainder of his life for the theft of a few dollars and some candy bars. This argument is without merit.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Burford, 39,610 (La. App. 2d Cir.5/11/05), 902 So.2d 1190. The articulation of the factual basis for a sentence is the goal of La. C. Cr. P. art. 894.1, not rigid or mechanical compliance with its provisions. The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App. 2d Cir.4/2/97), 691 So.2d 864; State v. Burford, supra.
Second, whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra; State v. Burford, supra.
Whoever commits the crime of armed robbery shall be imprisoned at hard labor for not less than ten years and for not more than 99 years, without benefit of parole, probation, or suspension of sentence. La. R.S. 14:64(B). The habitual offender law provides that if the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction. La. R.S. 15:529.1(A)(1)(a). Therefore, the defendant faced a sentencing exposure of 49½ years to 198 years at hard labor without benefits for armed robbery as a second felony offender.
The trial court in this matter imposed the minimum sentence possible for a multiple offender convicted of armed robbery. Although the original sentence in this matter was vacated in order to impose the habitual offender sentence, the trial court adopted its reasoning. At the original sentencing, the court noted that, in the present offense, the defendant wielded a gun, disregarding the safety of others. The defendant committed the present offense while on probation for attempted manslaughter, another serious crime of violence involving a weapon.
As aggravating factors, the court considered that the defendant received something of value in the commission of this offense, that he knowingly created a risk of death or great bodily harm to more than one person, and that he used threats of and actual physical violence in the commission of the crime. The court noted that the defendant used a dangerous weapon in *757 the commission of this armed robbery and threatened the use of physical force against the person and property of others. The court stated that the defendant had not expressed remorse for this offense and that a lesser sentence would deprecate the seriousness of the offense. The court found that there was an undue risk that the defendant would commit another offense during a suspended sentence or probation and that the defendant was in need of correctional treatment best provided by a custodial environment.
At the sentencing as a habitual offender, the court again considered the defendant's prior criminal record and noted that the prior offense and the present offense involved the use of firearms.
The trial court adequately articulated its reasons for the sentence imposed and did not abuse its discretion. The sentence is not excessive and is tailored to both the offender and the offense.[7]

CONCLUSION
For the reasons stated above, we affirm the conviction and sentence of the defendant, Jadaw Lawrence.
AFFIRMED.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, GASKINS, PEATROSS, and DREW, JJ.
Rehearing denied.
NOTES
[1] The Supreme Court was divided in the Thornton decision, with four justices signing the opinion, three concurring, and two dissenting. The concurrence of Justices Scalia and Ginsburg disagreed with the majority's reasoning that a safety search of a vehicle is reasonable when the defendant has been handcuffed and placed in a patrol car. These two Justices would uphold the search by broadening police authority to search for evidence when and where the perpetrator of a crime is located, limiting the search to cases where it is reasonable to believe that evidence relevant to the crime of arrest may be found in the vehicle. Under the approach proposed in the concurrence, the search in the instant case would also be upheld.
[2] A warrantless seizure of an item that comes within plain view of an officer in a legitimate position to view the item may be reasonable under the Fourth Amendment. See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Guiden, 399 So.2d 194 (La.1981), cert. denied, 454 U.S. 1150, 102 S.Ct. 1017, 71 L.Ed.2d 305 (1982). The plain view doctrine renders a warrantless search reasonable: (1) if the police officer is lawfully in the place from which he views the object; (2) where the object's incriminating character is immediately apparent; and (3) the officer has a lawful right of access to the object. State v. Willis, 36,759 (La.App. 2d Cir.4/9/03), 843 So.2d 592, writ denied, XXXX-XXXX (La.4/1/05), 897 So.2d 593.
[3] We are cognizant of the ruling in State v. Hernandez, 410 So.2d 1381 (La.1982), in which the Louisiana Supreme Court found that there was no prior justification for a search incident to a lawful arrest where the defendant's car was on his private property and the defendant had been arrested, hand-cuffed, and taken away. We are also aware of the holding of the Fifth Circuit in United States v. Green, 324 F.3d 375 (5th Cir.2003), cert. denied, 540 U.S. 823, 124 S.Ct. 152, 157 L.Ed.2d 43 (2003), which held that where a defendant was 25 feet from his car when he was arrested and handcuffed and the police perceived no threat, they could not lawfully search the passenger compartment of the car. The holding in Thornton may call those decisions into question.
[4] As noted above, the trial court originally sentenced the defendant to serve 25 years at hard labor, without benefit of parole, probation, or suspension of sentence. The defendant filed a motion to reconsider that sentence on grounds of excessiveness, which was denied by the trial court. On appeal, the defendant also argues that the 25-year sentence is excessive and that the trial court erred in denying his motion to reconsider the sentence. Because the 25-year sentence was vacated and the present habitual offender sentence was imposed, we find that the arguments regarding the excessiveness of that sentence are moot.
[5] In support of his argument that the habitual offender statute in this case violates double jeopardy, the defendant cites State v. Barakat, 38,419 (La.App. 2d Cir.6/23/04), 877 So.2d 223. Barakat is legally and factually distinguishable from the present case. The defendant also argues in brief that the habitual offender statute is unconstitutional because it violates the defendant's right to have a jury find beyond a reasonable doubt any and all facts necessary in connection with his sentencing, citing United States v. Mooney, (8th Cir.2004) 2004 WL 1636960. Mooney has been vacated by the Eighth Circuit on its own motion and later amended. See United States v. Mooney, 401 F.3d 940 (8th Cir.2005), and United States v. Mooney, 425 F.3d 1093 (8th Cir.2005). That case has no application to the present matter.
[6] The present case is distinguishable from State v. Hargrove, 39,045 (La.App. 2d Cir.10/27/04), 886 So.2d 1192, in which the probation and parole officer failed to testify that she supervised the defendant for the offenses charged in the habitual offender bill of information.
[7] The defendant made several assignments of error in this matter that have not been briefed or argued. Assignments of error which are neither briefed nor argued are considered abandoned. URCA Rule 2-12.4; State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Kotwitz, 549 So.2d 351 (La.App. 2d Cir.1989), writs denied, 558 So.2d 1123 (La.1990). Accordingly, these arguments are not considered.